The opinion of the Court was delivered by
Wardlaw. J.
The two demands brought under consideration in this case are essentially different, and must be treated separately. »
1. As to the $15,000. This was lent by Johnson to Miller and by Miller passed to his bank, the defendant. In the loan and attending circumstances, neither of the banks, parties to this suit, was engaged, by agent or otherwise. Johnson had no authority from the plaintiff to lend; Miller no authority from the defendant to borrow. Each of these tellers acted for himself only: both knew that they were dealing with the money of others, and doing so dishonestly, in breach of their official duty. The case is, in effect, that the two, having conspired to aid each other in execution of their fraudulent purpose, Johnson purloined the money from the Bank of Charleston, and Miller stealthily introduced it into his till in the Bank of the State of South Carolina.
The money belonged to the Bank of Charleston when Miller opened his till to introduce it. Has the right of that bank to recover it been taken away ? If so, how and when ?
The plaintiff’s right to recover other money of equal value from Miller is yet perfect. If, instead of money, the property abstracted from the plaintiff had been an ordinary chattel, the plaintiff’s right to recover, against a purchaser from Miller, the chattel or its value, would still subsist; for *310 be, having no title, could have transferred none. But certain negotiable papers and money (including bank bills, which are in most respects regarded as money) constitute an important exception to the general rule respecting acquisitions from persons who have no title. For the interests of commerce and safety of the every-day transactions of life, the free circulation of the mediums of exchange is so far encouraged by the law that the title to money passes with it to every one who honestly becomes possessed of it as his own. When a thief has -parted with it, the inquiry, in a contest between the former owner and the now possessor, is, Did the money pass in currency to the latter, (or to some other person through whom he claims,) bona fide, for valuable consideration, in the due course of business ? If it did, no recovery can be had by the former owner, either in an action looking to the very pieces of coin or very bills that were stolen, or in an action claiming equivalent damages. Miller vs. Race, 1 Burr. 452.
In the case before us, Miller received the sum of $15,000 September 2, and immediately placed it in the till, which, as teller of the defendant-bank, he used, mingling it with other money of his bank, which, as teller, he had received from the cashier or from customers. He, as teller, paid from the whole mass in his hands $84,000 next day; and in the course of the two subsequent weeks more than $700,000 passed through his hands. In the mean time various settlements, two or more, were made between him and the cashier, and September 20, the day after he left the bank, his cash, being counted, was found correct.
Did the money pass in currency to 'the defendant, that is was it transferred as cash from Miller to the defendant-bank? Miller, after the money reached his till, treated it in all respects as the bank’s money. Like the money intrusted to him by the cashier, it was used to meet demands presented at the counter of the bank, and thus to go into general cir- *311 dilation. The evidence makes it certain that much of it was paid out by him : the probability is that, at the time of his departure, very few of the bills which were abstracted from the Bank of Charleston remained in the Bank of the State of South Carolina: if any did, they were in no way distinguishable from other money of the latter bank.
Is the bona fieles of the defendant-bank, in the transaction, subject to just suspicion? On this head nothing has been imputed besides the constructive notice to the bank, which has been supposed to arise from the knowledge of the fraud possessed by its officer, Miller. But this knowledge was not acquired or used by Miller in the course of his agency as teller. It was involved in his own misconduct, and served only his own unworthy purpose. It would be as just to estop the plaintiff by the guilty knowledge of Johnson as to affect the defendant by the secrets shut up in'Miller’s breast.
Did the defendant-bank give valuable consideration for the money ? Miller, as teller, was short of cash; he obtained this money, and with it and other means made square his account. After the bank got this money, it had no more than it ought to have had: without this, it would have had so much less than its due. The consideration then was the same which applies wherever money is received in part payment of the balance of an account for advances made. With regard to the account between them, the bank and its teller had adverse interests, and stood towards each other as individuals dealing at arm’s length. The case of Swift vs. Tyson, 15 Pet. 22, makes it now clear that a credit, entered in an account of preceding indebtedness, is á valuable consideration for the receipt of money. If a teller be called a bailee, he is a bailee of money to be disbursed and accounted for, and for a balance unaccounted for mast be a debtor.
Was the money received by the defendant-bank from its teller in due course of business ?
That the bank should have a teller, that an account should *312 be kept of moneys advanced to Mm, and moneys disbursed by him, that he should be called to frequent settlements, that the balance of cash in his hands should be subjected to actual counting, and that he should be held debtor for any deficiency, are all incidents in the due course of business, and all occurred in this case. It is, however, said that the teller was in default, that his defalcation was unknown to the bank, and therefore that the $15,000 was not received by the bank in payment. In regard to the course of business and not to the base means by which the teller supplied his deficiencies, it was more regular that his cash should correspond with the balance in account against him, than that it should fall short; that he should appear to his employers to be accurate and faithful than that his errors and embezzlements should be manifest. The question is as to the bank’s right to retain the money which he furtively substituted for a like sum intrusted to him by the bank, which in some way he had dissipated. How could the bank know of the substitution ? What safety could there be in money transactions, if the right sum in the right place, honestly believed to be the bank’s own, and dealt with as its own, should be held to have been irregularly received, because the motives and conduct of its teller from whom it came were skilfully concealed ?
By whatever name we may call the transfer of this money to the defendant-bank, made by the teller in reduction of the balance against him — a payment, a restitution, or a concealment — there was nothing in the transaction between him and the bank out of the ordinary course of business. The more artful his conduct, the less the grounds of suspicion against him, the more plain is the fair dealing of the bank.
This case is distinguished from the Massachusetts case of The Atlantic Bank vs. The Merchants' Bank, 10 Gray’s Rep. 532, in this, that there the identical bills remained in the teller’s till, when they were demanded by the bank from which they had been fraudulently obtained. The circum *313 stance is, however, not material, for if the bills had been transferred bona fide from the teller to his bank, it mattered not whether afterwards they were kept identically as they were received, or were passed from the bank into general circulation. There is, however, another ground of distinction, which is material. There, in the opinion of the Court, supported by a majority of the Judges, it was held that the bills had not passed from the teller to the bank, for his intention was, after exhibiting them to be counted, to return them to the bank from which they were brought; and they remained, before and after the counting, under his control, capable of direct identification. Here there can be no doubt that Miller intended to pass the bills to the bank of which he was teller, and actually did so, however hopeful he may have been that, at some future day, he would have been able to contrive the return of a like sum to his confederate in the Bank of Charleston.
The conclusion of this Court is, that in respect to the $15,000 the verdict is right.
2. As to the $5,500. This sum got to the defendant-bank, through Couturier’s false acknowledgment of a deposit in the plaintiff-bank to the credit of the defendant-bank. This acknowledgment was procured by Miller and given by Couturier, in the course of a settlement of checks which it was the business of these tellers to make every day between their two banks. There was not in the fraudulent transaction a usurpation of authority on the part of either teller, but a most shameful abuse of it. Their contrivance in known violation of their duty, being within the scope of the .agency in which they were employed, was valid as to third persons, but void and worthy of punishment as between each of them and his principal whom he cheated. By means of it, money passed between the banks, not through the hands of an intermediate wrong-doer, but directly from one party to the other. The case, stripped of the embarrass *314 ment which surrounds artificial persons that can act only through agents, becomes that of one banker paying money to another, according to a statement of accounts made by their respective clerks duly authorized. Error in the statement which arose from mistake would be clearly subject to correction in ,au action for money had and received; and shall the mutual fraud of the clerks be more sacred than their honest mistake ?
This branch of the case does not fall within the principles of policy which decided the other. Here there was no consideration for the receipt of the money by the defendant from the plaintiff. It is true that through the false acknowledgment of Couturier, Miller obtained a credit in his account with the defendant-bank. That shows that Miller is still debtor to the extent of this credit, but is merely collateral to the payment made by the plaintiff to the defendant. Eor the payment there was no gain to the plaintiff, and no loss to the defendant, which in any way influenced either of the parties. Suppose Miller had passed in payment to his bank amóte direct from the plaintiff to the defendant, which as teller he had -fraudulently procured the plaintiff to give. Betwéen immediate parties the consideration of a negotiable paper is subject to inquiry, and, in an action by this defendant against this plaintiff on this note, the fraud would have constituted a valid defence. Recovery back of money paid on the note would have encountered difficulties which the plaintiff does not here meet; for here is an entry in a pass-book, not a negotiable paper, and here is in effect an error in an account, and not the payment of a single distinct demand. Johnson’s agency and knowledge in the whole affair avail no more against the plaintiff than do Miller’s against the defendant. A fraud, in which a party’s agent has concurred, cannot be more obligatory upon the party ignorant of it than the party’s own mistake would be. If we relieve both of these parties from the- effect of notice *315 had by their faithless agents, the case exhibits money paid under mutual mistake, induced by the fraud of third persons. To the condition in which matters stood before the mistake they should be now'restored. The superior equity of the plaintiff outweighs the possession of the defendant. See Ancher vs. Bank of England, Doug. 615; Kelly vs. Solari, 9 M. & W. 54.
The defendant’s loss by reason of Johnson’s acknowledgment regularly made has been much insisted upon. Eor damage thereby occasioned, even to the extent of the whole payment made under the acknowledgment, the defendant’s right to retain is not denied. But, so far as appears, the whole consequences of the acknowledgment which affected the defendant were, that thereby the defendant’s funds were increased, and Miller was retained as teller half a month longer than he would otherwise have been, during which time his conduct was unexceptionable. Here is not an instance where a loss must fall upon one of two innocent parties, for here a loss had been already sustained by one party, and the question concerns the propriety of shuffling that loss upon the other. In accuracy, as in probity, a mercantile community may well expect examples from their banks, but a superstitious reverence for bank books and bank entries should not induce forgetfulness of-the triumph which artful villany sometimes achieves over all the- exertions of human sagacity and care. Of the fallibility of banks, both of these parties must have a strong sense in the remembrance that both of them, ably and diligently managed, have been deceived by their subordinate officers.
The verdict, in respect to the $5,500, being, in the opinion of this Court, wrong, a new trial is ordered.
Dunkin, C. J., and Inglis, J., concurred.

Motion granted.